**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X   **Docket No.:**
CECIL THOMPSON,

Plaintiff,

- against -                                            **COMPLAINT**

STATE    FARM    MUTUAL    AUTOMOBILE          ***PLAINTIFF DEMANDS***
INSURANCE COMPANY d/b/a STATE FARM, and        ***A TRIAL BY JURY***
MARK WAGNER, *In His Official and Individual*
*Capacities*,

Defendants.
-------------------------------------------------------------------X

PLAINTIFF CECIL THOMPSON, by and through his attorneys, PHILLIPS &
ASSOCIATES, Attorneys at Law, PLLC, hereby complains of DEFENDANTS, upon information
and belief, as follows:

<u>**NATURE OF THE CASE**</u>

1.     PLAINTIFF complains pursuant to the <u>Americans with Disabilities Act of 1990</u>, <u>42 U.S.C</u>.
       §§ 12101, *et seq*. ("ADA"); <u>Family Medical Leave Act</u> ("FMLA"); <u>New York State Human</u>
       <u>Rights Law</u> §§ 296 *et seq*. ("NYSHRL"); and <u>New York City Human Rights Law / New</u>
       <u>York City Administrative Code</u> §§ 8-107, *et seq*. ("NYCHRL"), and seeks damages to
       redress the injuries PLAINTIFF has suffered as a result of being **discriminated and**
       **retaliated against (including hostile work environment)** by DEFENDANTS solely due
       to his **disabilities, whether actual and/or perceived**, and/or his engagement in protected
       activities, as well as **interfered with his rights under the FMLA**.

2.     In or around 1996, as a result of a motorcycle accident, PLAINTIFF lost use of (paralysis)
       his left arm.

3.     Since in or around 2006, PLAINTIFF was employed as an "Insurance
       Adjuster"/"Appraiser – Estimatics" at DEFENDANT STATE FARM.

4.      Then, on or about February 26, 2015, PLAINTIFF suffered an injury on the job, hurting his right shoulder, neck, and back.

5.      As a result of the fall, PLAINTIFF developed herniated disks in PLAINTIFF'S C4 to C7 (Cervical Discs), among other injuries.

6.      As a result of PLAINTIFF'S injuries, STATE FARM DEFENDANTS accommodated PLAINTIFF only briefly before forcing PLAINTIFF return to work full-time, without an accommodation.

7.      As a result of going back to work full-time, PLAINTIFF'S injuries were exacerbated resulting in PLAINTIFF requiring surgery on or about December 9, 2021.

8.      To make matters worse, when PLAINTIFF needed further surgeries as a result of his workplace injury, STATE FARM DEFENDANTS refused to accommodate PLAINTIFF and promptly terminated him days before his impending surgery, when he needed his employment, income, and health insurance the most himself - in violation of PLAINTIFF'S various rights as outlined below.

## JURISDICTION, VENUE, AND PROCEDURAL PREREQUISITES

9.      Jurisdiction of this Court is proper under 42 U.S.C. §§ 12101, *et seq*., and 28 U.S.C. §§ 1331 and 1343.

10.     The Court has supplemental jurisdiction over the claims that PLAINTIFF has brought under State and City law pursuant to 28 U.S.C. § 1367.

11.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as the acts complained of occurred therein.

12.     By: (a) timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") March 8, 2022; (b) receiving a Notice of Right to Sue from the EEOC on August 18, 2022; and (c) commencing this action within 90 days of the issuance

of the Notice of Right to Sue by the EEOC; PLAINTIFF has satisfied all of the procedural prerequisites for the commencement of the instant action.

13. A copy of the Notice of Right to Sue is annexed hereto as Exhibit A.

## **PARTIES**

14. **PLAINTIFF CECIL THOMPSON ("PLAINTIFF")** is a 52-year old male, who is a resident of the State of New Jersey and County of Mercer. PLAINTIFF suffers from disabilities including but not limited to: left arm paralysis and herniated disks (Cervical Disks C4 to C7), which were being medically treated.

15. **DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY d/b/a STATE FARM ("hereinafter "DEFENDANT STATE FARM")** is a Foreign Corporation formed under the laws of the State of Illinois and, upon information and belief, is not registered with New York State Department of State, Division of Corporations.

16. Upon information and belief, DEFENDANT STATE FARM has a principle place of business at One State Farm Plaza, Bloomington, Illinois 61710-0001.

17. Upon information and belief, DEFENDANT STATE FARM is an insurance company and employs more than 15 employees.

18. At all times relevant, **DEFENDANT MARK WAGNER (hereinafter, "DEFENDANT WAGNER")** is a "Estimatics Team Manager" ("ETM") for DEFENDANT STATE FARM. DEFENDANT WAGNER was PLAINTIFF'S manager/supervisor and had the ability to affect the terms and conditions of PLAINTIFF'S employment. DEFENDANT WAGNER is being sued herein in his individual and official capacities.

19. **DEFENDANTS, STATE FARM and WAGNER,** will be collectively referred to as **"STATE FARM DEFENDANTS."**

## **MATERIAL FACTS**

20.   In or around January 2006, PLAINTIFF began his employment with DEFENDANT STATE FARM as an "Insurance Adjuster"/"Appraiser – Estimatics."

21.   PLAINTIFF initially worked a full time schedule of approximately 38.45 hour per week, and earned $77,984.60, per year.

22.   PLAINTIFF had an expected 2022 annual income of $77,984.60, plus the value of his benefits, which included but was not limited to: Medical Insurance, Dental Insurance, Life Insurance, Group Voluntary AD/D, 401(k) Savings Plan, and Roth 401K Plan.

23.   At all times relevant, PLAINTIFF performed the functions of his employment in an above-satisfactory manner and was never written-up or disciplined as a result of his job performance.

24.   PLAINTIFF was qualified to perform the duties of his employment.

25.   In or around 1996, prior to his employment with STATE FARM DEFENDANTS, PLAINTIFF was in a motorcycle accident which resulted in his left arm being paralyzed.

26.   Limb paralysis is a recognized disability under the statutes herein as it substantially limits one or more of PLAINTIFF'S major life activities and PLAINTIFF has a history or record of same.

27.   Despite his disabilities, PLAINTIFF could perform the duties of his employment with or without a reasonable accommodation.

28.   Despite his disabilities, PLAINTIFF worked for/at DEFENDANT STATE FARM without any performance issues and PLAINTIFF excelled in his employment.

29.   PLAINTIFF worked at STATE FARM for almost 10 years without issue until on or about February 26, 2015.

30.   Then, on or about February 26, 2015, PLAINTIFF, while inspecting an automotive repair

facility for DEFENDANT STATE FARM, slipped-and-fell on ice, resulting in injuries to his right shoulder, neck, and back.

31. On or about March 2, 2015, PLAINTIFF learned that he developed herniated disks as a result of his slip-and-fall.

32. As a result, PLAINTIFF was awarded Worker's Compensation payments from on or about March 2, 2015 until the present, due to his need for ongoing medical treatment.

33. Nevertheless, PLAINTIFF continued to work, while in pain, and was required to go to pain management and physical therapy to address his injuries.

34. From in or around March 2018 until in or around May 2018, due to PLAINTIFF'S 2015 injuries worsening, PLAINTIFF was required to stop working altogether and took a medical leave of absence.

35. In or around June 2018, PLAINTIFF informed DEFENDANT STATE FARM that he could not return to work without an accommodation.

36. As a result, PLAINTIFF was stationed at an inspection location, rather than working in a mobile/field inspection position. Also, PLAINTIFF'S work schedule was changed to three days a week (Mondays, Wednesdays, and Fridays). Finally, the remaining two days not worked (Tuesdays and Thursdays) were covered through Paid Time Off ("PTO").

37. Initially, PLAINTIFF'S PTO was supposed to be reimbursed (through Worker's Compensation), when PLAINTIFF returned to work full time.

38. Based on his understanding that his PTO hours would be covered by Workers Comp, PLAINTIFF exhausted approximately 300 hours of PTO, by in or around December 2018.

39. But then in or around January 2019, PLAINTIFF learned that Workers' Compensation was not going to reimburse him for his paid time off.

40. As a result, PLAINTIFF was forced to return to a full-time schedule, while still suffering

from his 2015 injuries and receiving ongoing medical treatment for same.

41.     As expected, due to STATE FARM DEFENDANTS failure to find an alternate accommodation and PLAINTIFF'S forced early return, PLAINTIFF'S work performance was adversely affected as PLAINTIFF'S pain worsened the more he drove.

42.     As a result, PLAINTIFF was required to have multiple meetings with Mr. Greenzang about his performance issues.

43.     However, PLAINTIFF'S performance, although below his own pre-injury performance level, was still satisfactory, adequate and comparable to his similarly situated team members'.

44.     At almost each and every one of these meetings, PLAINTIFF would advise and remind Mr. Greenzang that PLAINTIFF'S work performance was affected due to STATE FARM DEFENDANTS' failure to properly accommodate PLAINTIFF.

45.     In or around the middle of 2019, DEFENDANT STATE FARM started implementing a virtual work setup for the Estimators, so they could perform field inspections remotely and not be required to go to the sites for physical inspections.

46.     Once this process was implemented, PLAINTIFF was only allowed to work virtually when asked.

47.     In or around March 2020, the City of New York shutdown as a result of the COVID-19 Pandemic.

48.     Therefore, from in or around March 2020 until in or around July 2021, PLAINTIFF worked virtually without issue. This included doing virtual inspections of the properties that PLAINTIFF would typically inspect in-person.

49.     PLAINTIFF was able to complete the essential functions of his job, while working virtually.

50.     In or around late 2020, PLAINTIFF learned that he may need surgery and PLAINTIFF was referred to a spinal surgeon as a result.

51.     On or about December 14, 2020, PLAINTIFF provided STATE FARM DEFENDANTS -- specifically Human Resources and Cigna (the Worker's Compensation provider) -- with a doctor's note.

52.     In or around April 2021, Mr. Greenzang retired as the Estimatics Team Manager.

53.     Soon thereafter, DEFENDANT WAGNER absorbed a portion of Mr. Greenzang's team and began to supervise PLAINTIFF.

54.     Since in or around June 2021, PLAINTIFF repeatedly reminded DEFENDANT WAGNER that PLAINTIFF'S 2015 injuries were worsening and that he had limitations on what he was able to do without an accommodation.

55.     On these occasions, DEFENDANT WAGNER would (specifically) tell PLAINTIFF that he (DEFENDANT WAGNER) could not do anything about PLAINTIFF'S accommodation(s).

56.     As a manger that had responsibilities over subordinates (like PLAINTIFF), DEFENDANT WAGNER was not trained or supervised by his employer DEFENDANT STATE FARM with regard to addressing disability issues in the workplace.

57.     DEFENDANT STATE FARM did not instruct PLAINTIFF with regard to how to seek a reasonable accommodation.

58.     DEFENDANT STATE FARM did not train supervise DEFENDANT WAGNER with regard to handling reasonable accommodation requests by his subordinates.

59.     If DEFENDANT STATE FARM did instruct DEFENDANT WAGNER about disabilities and reasonable accommodations, DEFENDANT WAGNER chose to willingly ignore same, to the detriment of PLAINTIFF.

60.    When placed on clear actual and constructive notice that PLAINTIFF had disabilities that was affecting his performance, DEFENDANT WAGNER did not engage in any interactive process with PLAINTIFF, nor did DEFENDANT WAGNER send PLAINTIFF to the department or person(s) responsible for addressing disability concerns.

61.    DEFENDANT STATE FARM did not have a policy or procedure with regard to handling disability issues and/or reasonable accommodations.

62.    If DEFENDANT STATE FARM did have such policies, its managers were not trained or instructed about any such policy, to the detriment of PLAINTIFF.

63.    On or about June 28, 2021, PLAINTIFF provided a doctor's note from Dr. Arien J. Smith, M.D. ("Dr. Smith"), PLAINTIFF'S Neurosurgeon, to DEFENDANT WAGNER, Kristie Russell ("Ms. Russell"), from Human Resources on the Accommodations and Team Leave, and Cigna.

64.    In this note, Dr. Smith advised that PLAINTIFF needed spinal surgery, as well as an accommodation to follow, until PLAINTIFF fully recovered from same.

65.    Dr. Smith also imposed limitations on PLAINTIFF, including that PLAINTIFF "should work from home and perform limited driving."

66.    Soon thereafter, on or about June 30, 2021, PLAINTIFF spoke with Ms. Russell and discussed his upcoming surgery (set for on or about December 9, 2021) and his need for an accommodation.

67.    Later that day,  Ms. Russell emailed PLAINTIFF documenting her call with PLAINTIFF and directed PLAINTIFF to contact Jennifer Affie ("Ms. Affie") of Sedgwick, which manages DEFENDANT STATE FARM'S Worker's Compensation claims, since PLAINTIFF'S Worker's Compensation benefits had been exhausted.

68.    In or around July 2021, DEFENDANT STATE FARM lifted its work-from-home protocol

and directed Estimators to go back into the field to work.

69. On or about August 3, 2021, Ms. Johnson emailed PLAINTIFF to fill out ADA paperwork, in order for her to process PLAINTIFF'S ADA accommodation request.

70. In addition, Ms. Johnson said that once she gets the paperwork, she will be able to evaluate PLAINTIFF'S request and speak with DEFENDANT WAGNER to outline PLAINTIFF'S request and his doctor's recommendations.

71. However, Ms. Johnson told PLAINTIFF, "*Although I will be making your leadership aware of your request, you will be responsible with communicating with them to determine an effective accommodation for you*."

72. Ms. Johnson thereby told PLAINTIFF that it was his responsibility to set up his own accommodation with his manager(s), rather than DEFENDANT STATE FARM engaging in an interactive process with PLAINTIFF.

73. DEFENDANT WAGNER, as a manager at STATE FARM, had the ability and authority to grant or deny PLAINTIFF'S requests for reasonable accommodations.

74. Ms. Johnson continued "*Please note, there is not a timeframe for when this process is complete. Also note, the ADA team does not make decisions on accommodations. ADA approval/non-approval decisions are at the discretion of department leadership*."

75. Ms. Johnson again thereby put the onus on PLAINTIFF to obtain his own accommodation with his manager(s) without help from DEFENDANT STATE FARM.

76. Though the manager, DEFENDANT WAGNER, had the authority to grant/deny accommodation requests, DEFENDANT WAGNER was not properly trained, supervised or instructed by STATE FARM with regard to the law(s) or STATE FARM'S ADA policies (if any).

77. On or about August 6, 2021, Nesha Johnson ("Ms. Johnson"), an ADA Rep from

DEFENDANT STATE FARM, reviewed Dr. Smith's medical notes (the June 2021 letter) and agreed that PLAINTIFF'S injury qualified for an accommodation.

78.  As a result, Ms. Johnson emailed PLAINTIFF, DEFENDANT WAGNER, Dominic Losquandro ("Mr. Losquandro"), Section Manager and DEFENDANT WAGNER'S boss, about PLAINTIFF'S accommodation request and outlined the federal guidelines for reasonable accommodations to DEFENDANT WAGNER.

79.  At this point, DEFENDANT WAGNER knew or should have known that he had an obligation to work with PLAINTIFF to see what (if any) accommodations could be granted to PLAINTIFF.

80.  DEFENDANT WAGNER was not pleased with the fact that he was being instructed to grant PLAINTIFF an accommodation and/or to engage in an interactive process with PLAINTIFF.

81.  On or about August 9, 2021, DEFENDANT WAGNER invited PLAINTIFF to a Skype meeting called "ADA Discussion and Performance."

82.  During this meeting, DEFENDANT WAGNER accused PLAINTIFF of not working according to policy and having low productivity.

83.  During this meeting, DEFENDANT WAGNER also accused PLAINTIFF of not meeting the baseline expectations and goals, as well as not meeting the team's average.

84.  In response, PLAINTIFF reminded DEFENDANT WAGNER that PLAINTIFF'S performance issues (if any) were caused by his disabilities and that PLAINTIFF could perform the duties of his job with a reasonable accommodation.

85.  DEFENDANT WAGNER responded that he understood that PLAINTIFF was in pain and needed surgery.

86.  But then, WAGNER stated that PLAINTIFF needed to decide if he could not do his job

because of his (PLAINTIFF'S) injuries and that he (PLAINTIFF) needed to resolve that.

87. Contrary to what PLAINTIFF was told by DEFENDANT STATE FARM'S HR Representative, DEFENDANT WAGNER continued that PLAINTIFF needed to call Human Resources to discuss accommodations, as Human Resources was the only ones who could deal with PLAINTIFF'S accommodation requests.

88. DEFENDANT WAGNER went on to say that he has neck problems of his own and he was (allegedly) sympathetic for PLAINTIFF.

89. In addition, DEFENDANT WAGNER told PLAINTIFF if he (PLAINTIFF) could not get the surgery, or if he could not drive, then he would not be able to complete the essential functions of his job, as DEFENDANT STATE FARM (allegedly) needed field employees because that was the expectation of the job.

90. In response, PLAINTIFF explained that he had a medical issue concerning high blood pressure, which was delaying his ability to do his surgery.

91. Callously, DEFENDANT WAGNER replied that PLAINTIFF was procrastinating on putting in an accommodation request.

92. However, by this time, PLAINTIFF made accommodation requests (on or about August 3, 2021) and was waiting on a response from DEFENDANT WAGNER.

93. In fact, PLAINTIFF was of the belief that the Skype call that he was on with DEFENDANT WAGNER at that moment was meant to be a part of the interactive process for PLAINTIFF'S accommodation.

94. DEFENDANT WAGNER was well aware that, as all of DEFENDANT STATE FARM'S adjusters (including PLAINTIFF) operated remotely due to the pandemic without issue, PLAINTIFF could have worked from home without creating a hardship on DEFENDANTS.

95.     There were many accommodations that could have been offered to PLAINTIFF that would not have created an undue hardship on STATE FARM.

96.     Yet, DEFENDANT WAGNER preferred to antagonize PLAINTIFF instead of engaging in a good faith interactive process.

97.     DEFENDANT WAGNER failed/refused  to engage in the interactive process during this meeting.

98.     Then, on or about August 16, 2021, DEFENDANT WANGER responded to Ms. Johnson's (HR Rep's) email, stating: "***After review of business area needs, we will be unable to make any accommodations to Cecil Thompson's work type and assignment***."

99.     However, DEFENDANT WAGNER told PLAINTIFF, a mere 10 days prior, that he (DEFENDANT WAGNER) did not have the power to determine what accommodations, if any, PLAINTIFF could obtain and it was within the purview of Human Resources, the ADA Department, and the section manager.

100.    Indeed, PLAINTIFF is aware of other similarly situated adjusters, who work under other managers, (such as Jeff Imburgia), and had similar injuries in or around the same time as PLAINTIFF, who were granted reasonable accommodations, including being able to work from home.

101.    DEFENDANT WAGNER summarily determined that he just did not want to help or grant PLAINTIFF a reasonable accommodation and wanted PLAINTIFF terminated from his employment instead.

102.    As a result of DEFENDANT WAGNER'S response, PLAINTIFF returned to work, against his doctor's orders, as PLAINTIFF needed his income for his upcoming surgery.

103.    As a result of same, PLAINTIFF'S disability worsened and/or was exacerbated.

104.    On or about August 19, 2021, PLAINTIFF was invited to a Skype meeting, titled "Policy

Review," with DEFENDANT WAGNER and Mr. Imburgia, to discuss the code of conduct.

105. Upon information and belief, it was not normal practice to have another ETM to witness team member reviews.

106. During the meeting, DEFENDANT WAGNER accused PLAINTIFF of allegedly misrepresenting PLAINTIFF'S time on his timecards.

107. Moreover, DEFENDANT WAGNER began to review PLAINTIFF'S time card entries right in front of PLAINTIFF, while PLAINTIFF watched, as a means to harass and intimidate PLAINTIFF.

108. Though PLAINTIFF tried to explain how his injuries was affecting the way that PLAINTIFF worked and reported time, PLAINTIFF was ignored by DEFENDANT WAGNER.

109. On or about August 26, 2021, PLAINTIFF sent an email to Manager Mr. Losquandro and asked him to review the "Policy Review" Skype meeting that took place between PLAINTIFF and DEFENDANT WAGNER.

110. PLAINTIFF complained about DEFENDANT WAGNER'S tone being harassing, abusive, and berating, and that DEFENDANT WAGNER disregarded PLAINTIFF'S ADA Accommodations requests.

111. PLAINTIFF also complained about the fact that his employment was unreasonably threatened by DEFENDANT WAGNER during the meeting.

112. Therefore, PLAINTIFF was making a clear complaint of disability discrimination and/or retaliation against DEFENDANT WAGNER.

113. Upon information and belief, as Mr. Losquandro was in a managerial/supervisory position, and had the duty to report PLAINTIFF'S complaints to Human Resources, but failed to do

so.

114. On or about September 24, 2021, DEFENDANT WAGNER advised PLAINTIFF that he (PLAINTIFF) would have an in-person meeting with Kevin English ("Mr. English"), a Section Manager in New Jersey, in or around the week of September 27, 2021.

115. PLAINTIFF, confused, asked DEFENDANT WAGNER what the meeting was going to be about.

116. DEFENDANT WAGNER snickered and replied "*You know…about that email you sent*."

117. Upon information and belief, DEFENDANT WAGNER was referring to PLAINTIFF'S email to Mr. Losquandro on August 26, 2021 wherein PLAINTIFF complained about harassment and ADA issues.

118. On or about September 27, 2021, PLAINTIFF met with Mr. English and Troy Lung ("Mr. Lung"), an Auditor.

119. During the meeting, Mr. English told PLAINTIFF that the meeting was about alleged inaccuracies in PLAINTIFF'S mileage entries, as well as PLAINTIFF'S work emails, which were allegedly forwarded to PLAINTIFF'S personal email address.

120. However, upon information and belief, it was not against company policy to forward emails to an individual's personal email, especially if it was the employee's own work product.

121. When PLAINTIFF explained that the forwarded email was with an attachment that PLAINTIFF drafted, Mr. English moved the conversation back to PLAINTIFF'S mileage issues.

122. PLAINTIFF also explained that he would take his company car to New Jersey only when needed (for parking and/or for maintenance purposes).

123. Mr. English continued that PLAINTIFF should update his mileage reports as soon as possible.

124.    At the end of the conversation, Mr. Lung told PLAINTIFF that he (Mr. Lung) would send his (Mr. Lung's) notes and recommendations to his (Mr. Lung's) boss, Jay Shae, and PLAINTIFF would hear from them about their decision.

125.    A few days later, on or about October 5, 2021, PLAINTIFF received an email from Mr. English requesting that PLAINTIFF provide a current photo of PLAINTIFF'S odometer in his car.

126.    Soon thereafter, PLAINTIFF provided Mr. English with a copy of same.

127.    On or about October 11, 2021, PLAINTIFF provided a letter from Dr. Smith to STATE FARM DEFENDANTS (and later to CIGNA), requesting that DEFENDANT STATE FARM permit PLAINTIFF to take a medical leave, due to his medical condition worsening.

128.    However, due to the confusion regarding his type of leave, PLAINTIFF was left with no recourse on which benefits to follow up with.

129.    On or about November 9, 2021, PLAINTIFF met with DEFENDANT WAGNER.

130.    During this meeting, DEFENDANT WAGNER told PLAINTIFF that DEFENDANT WAGNER wanted to review PLAINTIFF'S mileage versus PLAINTIFF'S time cards, to make sure that PLAINTIFF was being paid properly.

131.    DEFENDANT WAGNER continued that there was some alleged discrepancies as it related to PLAINTIFF'S mileage and that STATE FARM DEFENDANTS looked at PLAINTIFF'S last 51 work days, where 30 of those days had alleged issues with off-the-clock work.

132.    PLAINTIFF explained that he needed accommodations to be able to complete his work within the required time guidelines and that he still needed those accommodations in order to complete his tasks.

133.    PLAINTIFF continued that, based on his (PLAINTIFF'S) condition, each day was different, so some days he could work five minutes then needed a break, then other days he could work two hours, then need a break.

134.    PLAINTIFF explained about how his disabilities were causing PLAINTIFF to need be forced to use and report his time in unconventional ways.

135.    PLAINTIFF went on to explain that, though DEFENDANTS were well aware that he needed accommodations, his accommodations requests were disregarded by STATE FARM DEFENDANTS. As a result, PLAINTIFF may have had discrepancies in his time reporting.

136.    By on or about November 11, 2021, PLAINTIFF was virtually bedridden, and in severe pain, as a result of STATE FARM DEFENDANTS' refusal to accommodate PLAINTIFF'S disabilities.

137.    On or about November 12, 2021, PLAINTIFF called out sick and contacted Cigna/New York Life to advise them of PLAINTIFF'S need for FMLA leave, as PLAINTIFF did not expect to be able to return right after his surgery.

138.    On or about November 23, 2021, PLAINTIFF contacted Ms. Russell (HR Rep) and provided her with PLAINTIFF'S tentative surgery date of on or about December 9, 2021.

139.    Ms. Russell acknowledged PLAINTIFF'S request for FMLA leave due to his upcoming surgery and advise PLAINTIFF that she would forward the application to the appropriate people for review, including but not limited to Ms. Effie from Sedgwick.

140.    Ms. Russell also told PLAINTIFF that she (Ms. Russell) spoke with DEFENDANT WAGNER about his (PLAINTIFF'S) need for time off, but it would likely not be covered under Short-Term Disability and would have to be unpaid leave.

141.    Later that day, Ms. Russell informed Ms. Affie about PLAINTIFF'S medical status and

that PLAINTIFF has a tentative date for surgery of on or about December 9, 2021 and a pre-op date of on or about November 24, 2021.

142. Ms. Russell also instructed PLAINTIFF to reach out to New York Life, since PLAINTIFF was not able to work at the time and not entitled to Short-Term Disability because PLAINTIFF'S surgery was related to a Worker's Compensation injury.

143. On or about December 1, 2021, **a mere eight (8) days before PLAINTIFF'S surgery**, DEFENDANT WAGNER called PLAINTIFF and told PLAINTIFF that PLAINTIFF was going to be terminated that day.

144. DEFENDANT WAGNER continued that STATE FARM DEFENDANTS wanted to end their affiliation with PLAINTIFF.

145. PLAINTIFF responded that he could not hear DEFENDANT WAGNER clearly and asked DEFENDANT WAGNER to text message him or email him.

146. After PLAINTIFF repeated himself a few times, PLAINTIFF was forced to disconnect the call because it did not appear that DEFENDANT WAGNER could hear PLAINTIFF.

147. On or about December 3, 2021, PLAINTIFF received a termination letter stating that he (PLAINTIFF) was being terminated for alleged misconduct.

148. Soon thereafter, PLAINTIFF called DEFENDANT STATE FARM'S Human Resources and was directed to Michael (Last Name Unknown) ("Michael"), Human Resources Representative.

149. A few hours later, Michael returned PLAINTIFF'S call and in a confused manner told PLAINTIFF that his termination was as a result of alleged misrepresentation of mileage.

150. However, Michael  could not explain why that reasoning would result in PLAINTIFF'S termination, as it was not a typical terminal offense. STATE FARM did not terminate adjusters for alleged mileage discrepancies.

151. Upon information and belief, PLAINTIF is aware of other individuals who have used the company car in the same or similar manner as PLAINTIFF and those individuals have not been disciplined and/or terminated.

152. The excuse given to PLAINTIFF for his termination was pretextual.

153. PLAINTIFF was (wrongfully) terminated within weeks of advising DEFENDANT STATE FARM of his need for FMLA leave and continued need for reasonable accommodations.

154. Once DEFENDANT WAGNER was made aware that PLAINTIFF intended to take medical and/or FMLA leave to have surgery performed, and that PLAINTIFF would be out on medical leave for extended time, DEFENDANT WAGNER began to plot PLAINTIFF'S termination from STATE FARM.

155. PLAINTIFF was wrongfully discharged from his employment at/with DEFENDANT STATE FARM.

156. STATE FARM DEFENDANTS never engaged in any interactive process with PLAINTIFF.

157. STATE FARM DEFENDANTS had no good faith business justification for the actions taken against PLAINTIFF herein.

158. PLAINTIFF'S multiple accommodation requests, resulted in an adverse action, and he was ultimately discharged due to his disabilities and/or for seeking reasonable accommodations.

159. At no time did STATE FARM DEFENDANTS intend to offer PLAINTIFF accommodations as is required under Federal, State, and/or City laws.

160. But for PLAINTIFF'S disability and request for accommodations, PLAINTIFF would not have been wrongfully discharged.

161.   As PLAINTIFF had no performance problems, DEFENDANTS terminated PLAINTIFF solely due to his disabilities.

162.   **PLAINTIFF was also entitled to leave and/or protections under the <u>Family Medical Leave Act</u>, but was not advised of or afforded same.**

163.   DEFENDANTS' wrongful termination of PLAINTIFF was partially motivated by DEFENDANTS' intent to discriminate against PLAINTIFF and interfere with PLAINTIFF'S rights under the FMLA.

164.   STATE FARM DEFENDANTS' actions were malicious, intentional, and intended to harm PLAINTIFF.

165.   STATE FARM DEFENDANTS' conduct was a **<u>continuing violation of</u>** PLAINTIFF'S rights.

166.   As a result of STATE FARM DEFENDANTS' actions, PLAINTIFF was humiliated, degraded, victimized, embarrassed and emotionally distressed.

167.   As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary, loss of bonuses, loss of benefits, loss of employment, and other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, special damages, emotional pain, suffering, inconvenience, loss of enjoyment of life and other non-pecuniary losses.  PLAINTIFF has further experienced severe emotional and physical distress.

168.   STATE FARM DEFENDANTS' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, punitive damages as against STATE FARM DEFENDANTS are appropriate.

### AS A FIRST CAUSE OF ACTION FOR *DISCRIMINATION* <u>UNDER THE AMERICANS WITH DISABILITIES ACT</u> (*Against Defendant STATE FARM*)

169.   PLAINTIFF repeats, reiterates, and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

170.   <u>Title 42 of the Americans with Disabilities Act of 1990</u>, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

171.   But for PLAINTIFF'S disabilities and request for reasonable accommodations, DEFENDANT STATE FARM would not have terminated PLAINTIFF'S employment.

172.   DEFENDANTS' conduct against PLAINTIFF was motivated, in whole or in part, by PLAINTIFF'S disabilities, request for FMLA leave and/or requests for reasonable accommodations.

173.   PLAINTIFF advised DEFENDANT STATE FARM that he had disabilities and requested reasonable accommodations on multiple occasions.

174.   DEFENDANT STATE FARM refused to accommodate PLAINTIFF and declined to engage in the interactive process.

175.   Most certainly, DEFENDANT WAGNER, an Estimatics Team Manager, was aware of STATE FARM DEFENDANTS' obligations to engage in an interactive process and to access whether they could accommodate PLAINTIFF.

176.   DEFENDANT WAGNER, knew or should have known of his obligations to accommodate PLAINTIFF under the ADA.

177.   STATE FARM DEFENDANTS refused to attempt to assist and/or accommodate PLAINTIFF in accord with their obligations as managers and supervisors.

178.   As PLAINTIFF had no performance issues prior to PLAINTIFF'S slip and fall,

DEFENDANT STATE FARM had no good-faith business justification to terminate PLAINTIFF.

179.    STATE FARM DEFENDANTS engaged in an unlawful discriminatory practice by terminating PLAINTIFF because of his disabilities.

180.    As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary, loss of bonuses, loss of benefits, loss of employment, and other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, special damages, emotional pain, suffering, inconvenience, loss of enjoyment of life and other non-pecuniary losses.  PLAINTIFF has further experienced severe emotional and physical distress.

181.    As such, PLAINTIFF is entitled to the maximum amount allowed under this law.

### AS A SECOND CAUSE OF ACTION FOR *RETALIATION* UNDER THE AMERICANS WITH DISABILITIES ACT (*Against Defendant STATE FARM*)

182.    PLAINTIFF repeats, reiterates, and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

183.    The ADA prohibits retaliation, interference, coercion, or intimidation.

184.    42 U.S.C. § 12203 provides:

   i.    Retaliation. No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

   ii.   Interference, coercion, or intimidation. It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

185.    DEFENDANT STATE FARM engaged in an unlawful discriminatory practice by

retaliating against PLAINTIFF because of his disabilities and for engaging in protected activity by requesting a reasonable accommodation.

186. Most certainly, DEFENDANT WAGNER was aware of STATE FARM DEFENDANTS' obligations to engage in an interactive process and to access whether they could accommodate PLAINTIFF.

187. DEFENDANT WAGNER, knew or should have known of his obligations to accommodate PLAINTIFF under the ADA.

188. STATE FARM DEFENDANTS refused to attempt to assist and/or accommodate PLAINTIFF in accord with their obligations as managers and supervisors.

189. DEFENDANT STATE FARM had no good-faith business justification to terminate PLAINTIFF.

190. But for PLAINTIFF'S disabilities, DEFENDANT STATE FARM would not have terminated PLAINTIFF.

191. But for PLAINTIFF'S multiple request for reasonable accommodations, DEFENDANTS would not have terminated PLAINTIFF.

192. DEFENDANTS' conduct against PLAINTIFF was motivated, in whole or in part, by PLAINTIFF'S disabilities, request for FMLA leave and/or requests for reasonable accommodations.

193. As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary, loss of bonuses, loss of benefits, loss of employment, and other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, special damages, emotional pain, suffering, inconvenience, loss of enjoyment of life and other non-pecuniary losses. PLAINTIFF has further experienced severe emotional and physical distress.

194.   As such, PLAINTIFF is entitled to the maximum amount allowed under this law.

**AS A THIRD CAUSE OF ACTION FOR INTERFERENCE**
*INTERFERENCE / DISCRIMINATION*
<u>**UNDER THE FAMILY AND MEDICAL LEAVE ACT**</u>
*(Against Defendant STATE FARM only)*

195.   PLAINTIFF repeats, reiterates, and realleges each and every allegation made in the above

paragraphs of this Complaint.

196.   Section 2612(d)(2)(B) of the <u>FMLA</u>, states in pertinent part: "an eligible employee shall

be entitled to a total of 12 workweeks of leave during any 12-month period . . . Because of

a serious health condition that makes the employee unable to perform the functions of the

position of such employee."

197.   Section 2615(a) of the Family Medical Leave Act, states in pertinent part:

> Interference with rights. (1) Exercise of rights. It shall be unlawful
> for any employer to interfere with, restrain, or deny the exercise of
> or the attempt to exercise, any right provided under this subchapter.
> (2) Discrimination. It shall be unlawful for any employer to
> discharge or in any other manner discriminate against any individual
> for opposing any practice made unlawful by this subchapter.

198.   Defendant STATE FARM violated these sections as set forth herein.

199.   PLAINTIFF clearly communicated to STATE FARM DEFENDANTS, his need for an

accommodation and made STATE FARM aware of his circumstances, which qualified for

<u>FMLA</u> protections.

200.   PLAINTIFF specifically advised STATE FARM DEFENDANTS of his need for FMLA

leave, days off and/or other accommodations that would have allowed him to perform the

duties of his employment.

201.   PLAINTIFF could have been accommodated through FMLA leave.

202.   STATE FARM DEFENDANTS, after having been provided with reasonable notice, knew

or should have known that PLAINTIFF should have been afforded and advised of his rights

under the FMLA.

203.   Once PLAINTIFF advised DEFENDANTS of his need for FMLA leave, DEFENDANTS
immediately sought to interfere with, or retaliate against, PLAINTIFF'S FMLA rights.

204.   STATE FARM DEFENDANTS failed/refused to inform or offer FMLA to PLAINTIFF
and interfered with PLAINTIFF'S rights under the FMLA.

205.   In addition, STATE FARM DEFENDANTS failed/refused to provide general information
about the FMLA to all of their employees, including PLAINTIFF.

206.   STATE FARM DEFENDANTS failed/refused to inform employees, including
PLAINTIFF, about his eligibility for FMLA leave or the reason(s) that he was ineligible
(if any).

207.   COLLECTIVE DEFENDANTS failed/refused to advise PLAINTIFF about his rights and
responsibilities under the law.

208.   Upon information and belief, DEFENDANT STATE FARM could have allowed
PLAINTIFF to properly exercise FMLA leave.

209.   Instead, STATE FARM DEFENDANTS' wrongfully terminated PLAINTIFF in
retaliation and/or in furtherance of their discriminatory purposes as per the FMLA.

210.   STATE FARM DEFENDANTS were not concerned with the well-being of their employee,
PLAINTIFF. Instead, DEFENDANTS were aiming to eliminate PLAINTIFF by any
means.

211.   STATE FARM DEFENDANTS had no good faith business justification for any of the
actions taken against PLAINTIFF as alleged herein.

212.   As a result of STATE FARM DEFENDANTS' actions, PLAINTIFF was extremely
humiliated, degraded, victimized, embarrassed, and emotionally distressed.

213.   As a result of the acts and conduct complained of herein, PLAINTIFF suffered, and

continues to suffer, stress, ongoing humiliation, intimidation, ridicule, fear, anxiety, adverse employment action, loss of income, loss of past/future wages, the loss of a salary, special damages, loss of employment, loss of benefits, and loss of other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

214.  STATE FARM DEFENDANTS' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

215.  PLAINTIFF is entitled to the maximum damages allowable under this law as well as all other remedies specifically listed under the FMLA – including but not limited to reinstatement of her employment.

### AS A FOURTH CAUSE OF ACTION FOR *DISCRIMINATION* UNDER THE NEW YORK STATE EXECUTIVE LAW

216.  PLAINTIFF repeats, reiterates, and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

217.  The New York State Executive Law § 296(1)(a) provides in pertinent part: "It shall be an unlawful discriminatory practice: For an employer . . . because of an individual's . . . disability . . . to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

218.  STATE FARM DEFENDANTS violated this section as set forth herein.

219.  At all times, PLAINTIFF suffered from disabilities.

220.  But for PLAINTIFF'S  disabilities and requests for reasonable accommodations, STATE FARM DEFENDANTS would not have terminated PLAINTIFF'S employment.

221.  PLAINTIFF advised STATE FARM DEFENDANTS that he had  disabilities and requested reasonable accommodations on multiple occasions.

222. STATE FARM DEFENDANTS refused to accommodate PLAINTIFF and declined to engage in the interactive process.

223. Most certainly, DEFENDANT WAGNER was aware of STATE FARM DEFENDANTS' obligations to engage in an interactive process and to access whether they could accommodate PLAINTIFF.

224. DEFENDANT WAGNER, knew or should have known of his obligations to accommodate PLAINTIFF under the law.

225. STATE FARM DEFENDANTS refused to attempt to assist and/or accommodate PLAINTIFF in accord with their obligations as managers and supervisors.

226. DEFENDANTS' conduct against PLAINTIFF was motivated, in whole or in part, by PLAINTIFF'S disabilities and/or requests for reasonable accommodations.

227. STATE FARM DEFENDANTS had no good-faith business justification to terminate PLAINTIFF.

228. DEFENDANT WAGNER is liable for aiding and abetting the discriminatory/retaliatory conduct of their Principal, STATE FARM.

229. STATE FARM DEFENDANTS engaged in an unlawful discriminatory practice by terminating PLAINTIFF because of his disabilities.

230. As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary, loss of bonuses, loss of benefits, loss of employment, and other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, special damages, emotional pain, suffering, inconvenience, loss of enjoyment of life and other non-pecuniary losses. PLAINTIFF has further experienced severe emotional and physical distress.

231. As such, PLAINTIFF is entitled to the maximum amount allowed under this law.

## AS FOR A FIFTH CAUSE OF ACTION FOR *RETALIATION*
## UNDER THE NEW YORK STATE EXECUTIVE LAW

232. PLAINTIFF repeats, reiterates, and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

233. New York State Executive Law § 296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

234. STATE FARM DEFENDANTS violated this section as set forth herein.

235. STATE FARM DEFENDANTS engaged in an unlawful discriminatory practice by retaliating against PLAINTIFF because of his disabilities and for engaging in protected activity by requesting a reasonable accommodation.

236. Most certainly, DEFENDANT WAGNER, was aware of STATE FARM DEFENDANTS' obligations to engage in an interactive process and to access whether they could accommodate PLAINTIFF.

237. DEFENDANT WAGNER, knew or should have known of his obligations to accommodate PLAINTIFF under the law.

238. STATE FARM DEFENDANTS refused to attempt to assist and/or accommodate PLAINTIFF in accord with their obligations as managers and supervisors.

239. DEFENDANTS' conduct against PLAINTIFF was motivated, in whole or in part, by PLAINTIFF'S disabilities and/or requests for reasonable accommodations.

240. STATE FARM DEFENDANTS had no good-faith business justification to terminate PLAINTIFF.

241. But for PLAINTIFF'S disabilities, STATE FARM DEFENDANTS would not have terminated him.

242. DEFENDANT WAGNER are liable for aiding and abetting the discriminatory/retaliatory conduct of their Principal, DEFENDANT STATE FARM.

243. But for PLAINTIFF'S multiple request for reasonable accommodations, STATE FARM DEFENDANTS would not have terminated him.

244. As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary, loss of bonuses, loss of benefits, loss of employment, and other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, special damages, emotional pain, suffering, inconvenience, loss of enjoyment of life and other non-pecuniary losses. PLAINTIFF has further experienced severe emotional and physical distress.

245. As such, PLAINTIFF is entitled to the maximum amount allowed under this law.

### AS A SIXTH CAUSE OF ACTION FOR *DISCRIMINATION/RETALIATION* UNDER THE NEW YORK STATE EXECUTIVE LAW (*Individual Liability against INDIVIDUAL DEFENDANTS*)

246. PLAINTIFF repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint.

247. New York State Executive Law § 296(6) provides that it shall be an unlawful discriminatory practice: "For any person to **aid, abet,** incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

248. DEFENDANT WAGNER violated the section cited herein as set forth and was personally involved in the discriminatory and retaliatory actions about which PLAINTIFF complains herein.

249. DEFENDANT WAGNER utilized his power, authority, status, and position to subject PLAINTIFF to the wrongful treatment outlined in this Complaint.

250. But for DEFENDANT WAGNER'S position with/at DEFENDANT STATE FARM,

DEFENDANT WAGNER, would not have been able or authorized to take and continue his discriminatory and retaliatory campaign against PLAINTIFF.

251.   At all times relevant to the Complaint, while employed at DEFENDANT STATE FARM, PLAINTIFF was continuously subjected to discriminatory comments/intimidation, differential treatment, wrongful termination, and other discriminatory/retaliatory actions as alleged above.

252.   DEFENDANT WAGNER acting pursuant to his authority, ignored DEFENDANT STATE FARM'S own policies, procedures, and rules regarding discriminatory behavior in the workplace generally.

253.   At all times, DEFENDANT WAGNER was aware of his obligations to stop, prevent, investigate, and correct discriminatory practices against PLAINTIFF.

254.   DEFENDANT WAGNER is individually liable for aiding and abetting the discriminatory actions of his employer, DEFENDANT STATE FARM.

255.   DEFENDANT WAGNER had no good faith business justification for any of the actions taken against PLAINTIFF as alleged herein.

256.   As a result of STATE FARM DEFENDANTS' discriminatory treatment of PLAINTIFF, he has suffered severe emotional distress.

257.   PLAINTIFF was unlawfully humiliated, degraded, and belittled, suffered a violation of his rights, mental and emotional distress, loss of income/earnings, inconvenience, pain and suffering, extreme financial hardship, loss of employment, loss of employment benefits, humiliation, stress, anxiety, embarrassment, special damages, and emotional distress. PLAINTIFF has also suffered future pecuniary losses, emotional pain, inconvenience, loss of enjoyment of life, physical injuries, physical conditions, and other non-pecuniary losses.

258.   STATE FARM DEFENDANTS' conduct has been malicious, willful, outrageous, and

conducted with full knowledge of the law.

259. PLAINTIFF is entitled to the maximum amount of damages allowed under this statute.

## AS A SEVENTH CAUSE OF ACTION FOR *DISCRIMINATION* UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

260. PLAINTIFF repeats, reiterates, and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

261. The Administrative Code of the City of New York § 8-107(1) provides that

> It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, **disability**, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

262. STATE FARM DEFENDANTS violated the section cited herein.

263. But for PLAINTIFF'S disabilities and request for reasonable accommodations, STATE FARM DEFENDANTS would not have terminated PLAINTIFF'S employment.

264. DEFENDANTS' conduct against PLAINTIFF was motivated, in whole or in part, by PLAINTIFF'S disabilities and/or requests for reasonable accommodations.

265. PLAINTIFF advised STATE FARM DEFENDANTS that he had disabilities and requested reasonable accommodations on multiple occasions.

266. STATE FARM DEFENDANTS refused to accommodate PLAINTIFF and declined to engage in the interactive process.

267. Most certainly, DEFENDANT WAGNER, was aware of STATE FARM DEFENDANTS' obligations to engage in an interactive process and to access whether they could accommodate PLAINTIFF.

268. DEFENDANT WAGNER, knew or should have known of his obligations to accommodate PLAINTIFF under the law.

269. STATE FARM DEFENDANTS refused to attempt to assist and/or accommodate PLAINTIFF in accord with their obligations as managers and supervisors.

270. DEFENDANT STATE FARM is vicariously liable for the actions alleged herein as all DEFENDANT WAGNER was acting within the scope of his authorities as an officer, agent, manager, supervisor, or representative of his Principal, DEFENDANT STATE FARM.

271. As PLAINTIFF had no performance issues prior to his slip-and-fall, STATE FARM DEFENDANTS had no good-faith business justification to terminate PLAINTIFF.

272. STATE FARM DEFENDANTS engaged in an unlawful discriminatory practice by terminating PLAINTIFF because of his disabilities.

273. As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary, loss of bonuses, loss of benefits, loss of employment, and other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, special damages, emotional pain, suffering, inconvenience, loss of enjoyment of life and other non-pecuniary losses.  PLAINTIFF has further experienced severe emotional and physical distress.

274. As such, PLAINTIFF is entitled to the maximum amount allowed under this law.

## AS AN EIGHTH CAUSE OF ACTION FOR *RETALIATION* UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

275. PLAINTIFF repeats, reiterates, and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

276. The New York City Administrative Code §8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter. . ."

277.   STATE FARM DEFENDANTS engaged in an unlawful discriminatory practice in violation of New York City Administrative Code §8-107(7) by discriminating against PLAINTIFF because of PLAINTIFF'S opposition to the unlawful employment practices of PLAINTIFF'S employer.

278.   STATE FARM DEFENDANTS engaged in an unlawful discriminatory practice by retaliating against PLAINTIFF because of his disabilities and for engaging in protected activity by requesting a reasonable accommodation.

279.   Most certainly, DEFENDANT WAGNER, was aware of STATE FARM DEFENDANTS' obligations to engage in an interactive process and to access whether they could accommodate PLAINTIFF.

280.   DEFENDANT WAGNER, knew or should have known of his obligations to accommodate PLAINTIFF under the law.

281.   STATE FARM DEFENDANTS refused to attempt to assist and/or accommodate PLAINTIFF in accord with their obligations as managers and supervisors.

282.   STATE FARM DEFENDANTS had no good-faith business justification to terminate PLAINTIFF.

283.   DEFENDANTS' conduct against PLAINTIFF was motivated, in whole or in part, by PLAINTIFF'S disabilities and/or requests for reasonable accommodations.

284.   But for PLAINTIFF'S disabilities, STATE FARM DEFENDANTS would not have terminated PLAINTIFF.

285.   But for PLAINTIFF'S multiple request for reasonable accommodations, STATE FARM DEFENDANTS would not have terminated PLAINTIFF.

286.   DEFENDANT STATE FARM is vicariously liable for the actions alleged herein as DEFENDANT WAGNER was acting within the scope of his authority as an officer, agent,

manager, supervisor, or representative of their Principal, DEFENDANT STATE FARM.

287. As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary, loss of bonuses, loss of benefits, loss of employment, and other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, special damages, emotional pain, suffering, inconvenience, loss of enjoyment of life and other non-pecuniary losses.  PLAINTIFF has further experienced severe emotional and physical distress.

288. As such, PLAINTIFF is entitled to the maximum amount allowed under this law.

### AS AN NINTH CAUSE OF ACTION FOR *DISCRIMINATION/RETALIATION* UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### *(Aider and Abettor Liability against INDIVIDUAL MANAGER DEFENDANT)*

289. PLAINTIFF repeats, reiterates, and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

290. The New York City Administrative Code § 8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

291. STATE FARM DEFENDANTS engaged in an unlawful discriminatory practice in violation of New York City Administrative Code § 8-107(6) by aiding, abetting, inciting, compelling, and coercing the above discriminatory, unlawful, and retaliatory conduct.

292. But for PLAINTIFF'S disabilities and request for reasonable accommodations, STATE FARM DEFENDANTS would not have terminated PLAINTIFF'S employment.

293. PLAINTIFF advised STATE FARM DEFENDANTS that he had disabilities and requested reasonable accommodations on multiple occasions.

294. STATE FARM DEFENDANTS refused to accommodate PLAINTIFF and declined to engage in the interactive process.

295.  STATE FARM DEFENDANTS engaged in an unlawful discriminatory practice by retaliating against PLAINTIFF because of his disabilities and for engaging in protected activity by requesting a reasonable accommodation.

296.  Most certainly, DEFENDANT WAGNER, was aware of STATE FARM DEFENDANTS' obligations to engage in an interactive process and to access whether they could accommodate PLAINTIFF.

297.  DEFENDANT WAGNER, knew or should have known of his obligations to accommodate PLAINTIFF under the law.

298.  DEFENDANT WAGNER aided and abetted DEFENDANT STATE FARM in its discrimination against PLAINTIFF.

299.  But for DEFENDANT WAGNER'S positions as manager and/or supervisor at DEFENDANT STATE FARM, he would not have been able to discriminate and retaliated against PLAINTIFF.

300.  STATE FARM DEFENDANTS refused to attempt to assist and/or accommodate PLAINTIFF in accord with their obligations as managers and supervisors.

301.  As PLAINTIFF had no performance issues prior to his slip-and-fall, STATE FARM DEFENDANTS had no good-faith business justification to terminate PLAINTIFF.

302.  But for PLAINTIFF'S disabilities, STATE FARM DEFENDANTS would not have terminated him.

303.  But for PLAINTIFF'S multiple request for reasonable accommodations, STATE FARM DEFENDANTS would not have terminated him.

304.  DEFENDANT STATE FARM is vicariously liable for the actions alleged herein as DEFENDANT WAGNER was acting within the scope of his authorities as an officer, agent, manager, supervisor, or representative of his Principal, DEFENDANT STATE

FARM.

305.     As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary, loss of bonuses, loss of benefits, loss of employment, and other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, special damages, emotional pain, suffering, inconvenience, loss of enjoyment of life and other non-pecuniary losses.  PLAINTIFF has further experienced severe emotional and physical distress.

306.     As such, PLAINTIFF is entitled to the maximum amount allowed under this law.

## JURY DEMAND

307.     PLAINTIFF requests a jury trial.

**WHEREFORE**, PLAINTIFF respectfully requests a judgment against the STATE FARM DEFENDANTS:

A.     Declaring that STATE FARM DEFENDANTS engaged in unlawful employment practices prohibited by the Americans with Disabilities Act, Family Medical Leave Act, New York State Human Rights Law, and New York City Administrative Code, and in that STATE FARM DEFENDANTS discriminated against PLAINTIFF on the basis of his disabilities;

B.     Awarding damages to PLAINTIFF for all lost wages and benefits resulting from STATE FARM DEFENDANTS' unlawful discrimination and retaliation and to otherwise make him whole for any losses suffered as a result of such unlawful employment practices;

C.     Awarding PLAINTIFF compensatory damages for mental, emotional, and physical injury, distress, pain and suffering, and injury to his reputation in an amount to be proven;

D.     **Reinstating PLAINTIFF to his position as authorized by the statutes herein;**

E.     Awarding PLAINTIFF punitive damages;

F.     Awarding PLAINTIFF attorneys' fees, costs, disbursements, and expenses incurred in the

prosecution of the action; and

G.     Awarding PLAINTIFF such other and further relief as the Court may deem equitable, just, and proper to remedy the STATE FARM DEFENDANTS' unlawful employment practices.

Dated:  New York, New York
        September 30, 2022

                                   **PHILLIPS & ASSOCIATES,**
                                   **Attorneys at Law, PLLC**


                           By:     _____/S/_____
                                   Gregory Calliste, Jr., Esq.
                                   Alexandria Jean-Pierre, Esq.
                                   *Attorneys for Plaintiff*
                                   45 Broadway, Suite 430
                                   New York, New York 10006
                                   T: (212) 248-7431
                                   F: (212) 901 - 2107
                                   gcalliste@tpglaws.com
                                   ajean-pierre@tpglaws.com