UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CECIL THOMPSON,

               Plaintiff,

-against-

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY d/b/a STATE FARM *et al.*,

               Defendants.

22-cv-8375 (AS)

OPINION AND ORDER

---

ARUN SUBRAMANIAN, United States District Judge:

## BACKGROUND

In 2006, Cecil Thompson began working as an appraiser at State Farm, estimating the costs of repairing damaged vehicles. Thompson Dep. 27:24–28:25, Dkt. 46-1. About fifteen years later, he was fired. *Id.* at 28:22–25. Thompson says that while he was employed, State Farm failed to accommodate his disability, which involved injuries sustained on the job to his shoulder, neck, and back, as well as two herniated disks. Thompson also says that he was fired because of his disability, in retaliation for seeking an accommodation, and for trying to take FMLA medical leave to get surgery for his injuries. He brings claims for disability-based discrimination and retaliation in violation of the ADA, NYSHRL, NYCHRL, and FMLA. Compl. ¶¶ 169–306, Dkt. 1. He sues both State Farm and his direct supervisor, Mark Wagner.

Thompson now moves for partial summary judgment on his failure-to-accommodate claim. Dkt. 37. Defendants move for summary judgment on all claims. Dkt. 29. For ease, this opinion uses "State Farm" to refer collectively to Defendants.

## LEGAL STANDARDS

"Summary judgment is appropriate where the record reveals that there is 'no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *McElwee v. Cnty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(a)). In determining whether there is a genuine dispute, "the court must resolve all ambiguities, and draw all inferences, against the moving party." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).

## DISCUSSION

### I. The disability-discrimination claims

Thompson premises his disability-discrimination claims on both an adverse employment action and a failure to accommodate. The claims are brought pursuant to city, state, and federal law.

A. Adverse-employment action

Claims for disability discrimination under the ADA and NYSHRL are governed by the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). *See Tafolla v. Heilig*, 80 F.4th 111, 118 (2d Cir. 2023); *see also Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 n.3 (2d Cir. 2006) ("A claim of disability discrimination under the [NYSHRL] … is governed by the same legal standards as govern federal ADA claims."). Under this framework, the plaintiff has the "initial burden of establishing a *prima facie* case." *Id.* To do so for an adverse-action case, the plaintiff must show that "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered [an] adverse employment action because of his disability." *Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program, Inc.*, 198 F.3d 68, 72 (2d Cir. 1999).

If the plaintiff establishes a *prima facie* case, the defendant must articulate a legitimate, nondiscriminatory reason for its actions. *Id.* If the defendant does so, the plaintiff has the burden to prove that the proffered reason was not the true reason for the employment decision. *Id.*

State Farm says that Thompson fails to make a *prima facie* case because his disability prevents him from driving to inspect vehicles at repair shops and other locations and doing so was an essential function of being an appraiser. Dkt. 30 at 13. There are numerous factors relevant to determining a position's essential functions, including "the employer's judgment, written job descriptions, the amount of time spent on the job performing the function," and "the work experience of current employees in similar positions." *McMillan v. City of New York*, 711 F.3d 120, 126 (2d Cir. 2013). No one factor is dispositive, and the inquiry is "fact-specific." *Id.* (quoting *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 140 (2d Cir. 1995)). "A court must avoid deciding cases based on 'unthinking reliance on intuition about the methods by which jobs are to be performed.'" *Id.* (quoting *Borkowski*, 63 F.3d at 140).

Thompson says that driving was not an essential function of being an appraiser because other State Farm appraisers did the same job remotely. Wagner Dep. 98:1–101:11, Dkt. 46-2. State Farm counters that those appraisers lived in Long Island. Dkt. 50 at 2. It argues that because Long Island was home to many State Farm appraisers, the company could allow some of them to work remotely while still having enough appraisers to cover the on-site work. *See* Wagner Dep. 140:15–142:16, Dkt. 46-2. By contrast, Thompson was the only Bronx-based appraiser. Losquadro Decl. ¶¶ 4, 15, Dkt. 43. As such, State Farm says it was necessary for him to drive to work sites. But as Thompson points out, there were other appraisers assigned to work in the Bronx (though they did not live there). Wagner Dep. 77:22–78:8, Dkt. 46-2 (explaining that between three and five appraisers were assigned to the Bronx). State Farm responds that as a matter of law, it did not need to reassign Thompson's in-person work to other employees, citing *Clark v. Coca-Cola Beverages Ne., Inc.*, 2020 WL 6822982, at *5 (N.D.N.Y. Nov. 20, 2020), *aff'd*, 2022 WL 92060 (2d Cir. Jan. 10, 2022). But that citation jumps the gun: *Clark* held that an employer is "not obligated to reassign to other workers [an] *essential function*." *Id.* (emphasis added). Here, we must first answer the question of whether driving to on-site inspections *was* an essential function.

Neither party points to any additional relevant evidence on this question, such as a written job description or the amount of time appraisers spent driving. Thompson stresses that all appraisers worked virtually during COVID. But courts have repeatedly held that temporary modifications due to the global pandemic do not change a job's essential functions. *See, e.g.*, *Thomas v. Bridgeport Bd. of Educ.*, 2022 WL 3646175, at *3–4 (D. Conn. Aug. 24, 2022); *Jordan v. Sch. Bd. of the City of Norfolk*, 2023 WL 5807844, at *11 (E.D. Va. Sept. 7, 2023).

So there is a genuine issue of material fact as to whether driving was an essential function. A reasonable juror could find that driving was essential to Thompson's job because he was the only appraiser who lived in the Bronx and the company needed a Bronx-based appraiser to work on site. A reasonable juror could also find that driving was not essential because the company allowed other appraisers to work remotely, and an appraiser's borough of residence was arbitrary because appraisers were regularly assigned to work in areas where they did not live. *Cf. McMillan*, 711 F.3d at 127 (holding that district court erred in granting summary judgment because "a reasonable juror could find that [task] was not an essential function").

There is also a factual issue as to whether State Farm's reason for terminating Thompson was pretextual. State Farm says that Thompson was fired for various violations of the company's Code of Conduct and Company Vehicle Policy, including failing to enter mileage on his car, using the car for personal matters, and failing to complete a Code of Conduct form, which State Farm says had nothing to do with his disability. State Farm points out that it has fired other employees for similar violations.

To show pretext under the ADA and NYSHRL, Thompson must produce evidence that the adverse employment action would not have occurred but for his disability. *See Bourara v. New York Hotel Trades Council & Hotel Ass'n of New York City, Inc., Emp. Benefit Funds*, 2021 WL 4851384, at *1 (2d Cir. Oct. 19, 2021); *Natofsky v. City of New York*, 921 F.3d 337, 349 (2d Cir. 2019). Here, Thompson produces sufficient evidence to allow a reasonable jury to conclude that he would not have been fired but for his disability, so his claims survive.

"As a general matter, verbal comments may raise an inference of discrimination . . . ." *Luka v. Bard Coll.*, 263 F. Supp. 3d 478, 487 (S.D.N.Y. 2017). In deciding whether a comment shows discriminatory animus, courts consider "(i) who made the remark, *i.e.*, a decisionmaker, a supervisor, or a low-level co-worker; (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark . . .; and (4) the context in which the remark was made, *i.e.*, whether it was related to the decisionmaking process." *Id.* (quoting *Schreiber v. Worldco, LLC*, 324 F. Supp. 2d 512, 519 (S.D.N.Y. 2004)).

Thompson says that Wagner commented about the effect of Thompson's disability on his job performance in ways that are indicative of discriminatory intent. For example, Thompson recorded a conversation where Wagner said that Thompson had to "make a decision. If you can't do the job because of your injury, then you need to resolve that so that you can do the job" and "it's pretty obvious that if you can't do the job, you can't do the job." Dkt. 46-12 at 2:10–15. Wagner also said that Thompson's inability to drive would be "detrimental to [his] job" and that

3

if surgery didn't heal Thompson's injuries, then it "sounds to me based on what you're telling me, you can't do this job." *Id.* at 9:13–23; 11:2–11:13. Wagner also told Thompson that he needed to meet production goals or "choices are going to be made for you." *Id.* at 19:8–12. The comments plausibly suggest that Wagner felt that Thompson's disability made him unqualified for his job, which would be discriminatory if, in fact, Thompson could perform the essential functions with reasonable accommodation. *Cf. Capella v. Town of Windsor Locks*, 2023 WL 184244, at *8 (D. Conn. Jan. 13, 2023) (holding comment that if disabled employee "continued to maintain her half-day schedule, she was 'going to walk'" constitutes "particularly compelling evidence of pretext"); *Rotger v. Montefiore Med. Ctr.*, 2019 WL 1429556, at *9 (S.D.N.Y. Mar. 29, 2019) (holding supervisor's comments about disabled worker, including "Are we going to be able to deal with you?" and "Is it going to be a problem?," to be suggestive of discriminatory animus); *Primmer v. CBS Studios, Inc.*, 667 F. Supp. 2d 248, 259–60 (S.D.N.Y. 2009) (holding comments about needing "someone at the top of their game" and someone "who could handle the pressure" could be indicative of discrimination against employee who suffered aneurysm). All parties acknowledge that Wagner was Thompson's supervisor and played a role in his termination. Wagner Dep. 142:17–143:2, Dkt. 46-2. Plus, these comments were apparently made close in time to Thompson's termination and in the context of discussing his performance and future at the company. Dkt. 46-12 at 4–5, 7.

State Farm responds by complaining that Thompson did not authenticate these recordings. Dkt. 41 at 22–23. But State Farm does not actually attack the authenticity of the recordings, and authentication is only required on a summary judgment motion when authenticity is challenged. *Daniel v. UnumProvident Corp.*, 261 F. App'x 316, 319 (2d Cir. 2008). In any event, Thompson confirmed in his deposition that he made two recordings of his conversations with Wagner, and it is "well-established that even inadmissible evidence may properly be considered on summary judgment if it may reasonably be reduced to admissible form at trial." *Parks v. Blanchette*, 144 F. Supp. 3d 282, 293 (D. Conn. 2015) (internal quotation marks omitted). The Court anticipates that these recordings will be authenticated at trial by Thompson's testimony. *See United States v. Tropeano*, 252 F.3d 653, 661 (2d Cir. 2001) (audio tapes were sufficiently authenticated where witness had "firsthand knowledge of the conversations and … identified the voices on the tapes").

State Farm also argues that the misconduct for which Thompson was fired "predates his August 2021 [accommodation] request." Dkt. 30 at 18. But this argument backfires because it shows that the behavior for which Thompson was allegedly fired had been going on for quite some time. According to State Farm, Thompson was repeatedly reminded about the need to enter mileage for his company car in 2020 and 2021. Dkt. 36 ¶ 138; Thompson Dep. 197:8–207:24, Dkt. 39-1. But it was not until mid-August 2021—soon after Thompson submitted his accommodation request—that State Farm seemingly began to take Thompson's violations of company policy seriously. *See* Dkt. 31-11 at 5. There are of course many possible explanations for this timing (including the fact that Thompson had also gotten a new manager), but the fact that Thompson's misconduct predates his ADA request does not compel summary judgment for State Farm. *See Baron v. Advanced Asset & Prop. Mgmt. Sols., LLC*, 15 F. Supp. 3d 274, 283–84 (E.D.N.Y. 2014)

("An employment discrimination claimant may show pretext by demonstrating such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." (internal quotations omitted)).

In sum, a reasonable juror could find that the stated reason for Thompson's termination was pretextual, so summary judgment is denied on Thompson's ADA and NYSHRL disability-discrimination claims. And because the NYCHRL "creates a lower threshold for actionable conduct," summary judgment is denied on that claim as well. *Piligian v. Icahn Sch. of Med. at Mount Sinai*, 490 F. Supp. 3d 707, 717 (S.D.N.Y. 2020); *see also Bourara*, 2021 WL 4851384, at *1 (explaining that "a plaintiff may prevail in a NYCHRL case if discrimination was a partial motivating factor").

### B. Failure to accommodate

State Farm and Thompson cross-move for summary judgment on Thompson's failure-to-accommodate claim. Both motions are denied. As with adverse-action cases, to establish discrimination based on a failure to accommodate under the ADA and NYSHRL, Thompson must show that he "could perform the essential functions of the job at issue." *Tafolla*, 80 F.4th at 118. And as discussed, there is a genuine issue of material fact as to whether driving was an essential function of Thompson's job. For similar reasons, there is also a genuine issue of material fact as to whether accommodating Thompson's disability would impose an undue hardship on the company. *See McMillan*, 711 F.3d at 128 ("If a plaintiff suggests plausible accommodations the burden of proof shifts to the defendant to demonstrate that such accommodations would present undue hardships and would therefore be unreasonable."). State Farm argues that assigning Thompson virtual work would create an undue hardship because the company's business needs "required [Thompson], the only [appraiser] fully assigned to the Bronx and also living in the Bronx, to conduct at least some inspections in the field." Dkt. 30 at 13–14. But as Thompson points out, the company was already requiring employees who lived outside of the Bronx to work within it. Wagner Dep. 77:22–78:8, Dkt. 46-2 (explaining that between three and five appraisers were assigned to the Bronx). So there are genuine issues of material fact precluding summary judgment for either party.

State Farm also argues that even if it failed to accommodate Thompson, Thompson fails to show that there were any damages. But this argument is premised on the theory that Thompson was terminated for a reason unrelated to his disability. As discussed, whether that is in fact true presents a question of fact for the jury.

Thompson also argues that under city and state law, failure to engage in an interactive process concerning an accommodation request is itself a violation. But "there is no independent cause of action for the failure to engage in an 'interactive process' under the … NYSHRL." *Heiden v. New York City Health & Hosps. Corp.*, 2023 WL 171888, at *33 n.28 (S.D.N.Y. Jan. 11, 2023). So to the extent Thompson relies on state law, this argument fails. There is, however, an

independent cause of action under city law for failing to engage in a "cooperative dialogue." *Id*; *see Hosking v. Mem'l Sloan-Kettering Cancer Ctr.*, 126 N.Y.S.3d 98, 103 (1st Dep't 2020). A cooperative dialogue is defined as a "good faith … written or oral dialogue concerning the person's accommodation needs; potential accommodations that may address the person's accommodation needs, including alternatives to a requested accommodation; and the difficulties that such potential accommodations may pose for the covered entity." *Hosking*, 126 N.Y.S.3d at 103 (citation omitted).

But contrary to Thompson's suggestion on his summary judgment motion, there are factual issues as to whether State Farm complied with this requirement. For instance, after deciding that it could not provide Thompson's requested accommodation, State Farm suggested that Thompson return to his doctor to see if there were any other potential accommodations. Johnson Opp. Decl. ¶ 19, Dkt. 42. So there remains a fact issue as to whether State Farm engaged in a "good faith" dialogue for purposes of Thompson's claim under the NYCHRL.

## II. The retaliation claims

State Farm also moves for summary judgment on Thompson's city, state, and federal retaliation claims. The state and ADA claims are governed by the same standards. *See Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002). To establish a *prima facie* case of retaliation, a plaintiff must show that she was engaged in a protected activity, the employer knew of that activity, an adverse employment action was taken, and there was a causal connection between the protected activity and adverse action. *See id.*; *Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 234 (2d Cir. 2000). "Once a plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the challenged employment decision." *Treglia*, 313 F.3d at 721. If the defendant does so, "the plaintiff must point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation." *Id.* (citation omitted). "[T]emporal proximity is insufficient to satisfy plaintiff's burden to bring forward some evidence of pretext." *Sivio v. Vill. Care Max*, 436 F. Supp. 3d 778, 801–02 (S.D.N.Y. 2020) (citation and alteration omitted). Once again, the standard for establishing a claim for retaliation under city law is less onerous; "the protected activity need only have been a motivating factor in the adverse action." *Ottoson v. SMBC Leasing & Fin., Inc.*, 2020 WL 881992, at *3 (S.D.N.Y. Feb. 24, 2020) ("[T]he NYCHRL … must be reviewed … more liberally than its federal and state counterparts." (internal quotation marks omitted)).

State Farm says that Thompson's state-law retaliation claim must be dismissed off the bat because requesting an accommodation does not count as protected activity under the NYSHRL. Thompson concedes this point but says that complaining about or opposing discriminatory practices does. *See* Dkt. 46 at 16–17. And he says that he complained that Wagner was discriminating against him because of his disability in an August 26, 2021 email. Dkt. 46-5. Wagner was copied on that email. *Id.* Then, on August 31, 2021, Wagner authored a memo detailing Thompson's performance issues, including his failure to complete as many estimates as other appraisers (which Thompson said was a result of State Farm's failure to accommodate him).

6

Dkt. 46-15. The memo also documented Thompson's failure to complete the Code of Conduct form. *Id.* Thompson says that this memo shows that Wagner and State Farm harbored animus toward him for complaining about discrimination and thus supports the inference of retaliation. That is, Wagner and State Farm wanted to get rid of Thompson for complaining and accusing them of discrimination, and so they ramped up plans to terminate him, by preparing a memo and then working towards Thompson's termination over the next couple of months.

In response, State Farm argues that the memo simply documented earlier conversations about Thompson's performance issues. Dkt. 50 at 7. Still, the decision to document these conversations in an "official" memo could be seen as an escalation that took place suspiciously soon after Thompson complained about the failure to accommodate him. Wagner Dep. 116:14–17, Dkt. 46-2. State Farm also says that this memo was prepared at the direction of human resources "well before Thompson sent his email." Dkt. 50 at 7. But the declaration State Farm cites for support does not actually say that the memo was prepared before Thompson's email. At best it seems to say that Wagner was "directed to" prepare the memo after a meeting with Thompson on August 19, 2021, without any indication of precisely when that direction came, and when the memo was drafted. *See* Wagner Reply Decl. ¶ 8, Dkt. 51 (stating that he was directed to prepare the memo "shortly after [his] meeting with Thompson on August 19, 2021"). And because this is State Farm's motion, all reasonable inferences must be drawn in Wagner's favor.

In sum, the Court finds Thompson has pointed to sufficient evidence for a rational factfinder to conclude that State Farm's explanation for his termination was a pretext for retaliation for complaining about State Farm's failure to accommodate him. Not only is there the temporal proximity between Wagner's August 26th complaint and his December 1st termination, there is the memo documenting Wagner's performance issues prepared just five days after Thompson complained about discrimination. And there are Wagner's comments that Thompson needed to "resolve" his injury "so that [he] can do the job." Dkt. 46-12 at 2:12. Summary judgment on Thompson's NYSHRL retaliation claim, and for the same reasons, summary judgment on Thompson's analogous NYCHRL and ADA claims, is denied. *See Treglia*, 313 F.3d at 720 (explaining that complaining about employer's discrimination is protected activity under the ADA); *Mi-Kyung Cho v. Young Bin Cafe*, 42 F. Supp. 3d 495, 507 (S.D.N.Y. 2013) ("Protected activity within the meaning of the NYSHRL and NYCHRL is conduct that opposes or complains about unlawful discrimination." (internal quotation marks omitted and alterations)).

### III. The FMLA claim

State Farm next moves to dismiss Thompson's claim for interference with his FMLA rights and retaliation. State Farm says that the retaliation claim must be dismissed because Thompson did not assert it in the complaint. But the complaint does specifically allege that once informed of Thompson's need for FMLA leave, Defendants took steps to retaliate, ultimately terminating Thompson. Compl. ¶¶ 203–04, 209. Indeed, whether labeled "interference" or "retaliation," it appears that this is the only conduct forming the basis of Thompson's FMLA claim. Dkt. 46 at 21–22 (arguing that "a reasonable jury could conclude that Defendants interfered with Plaintiff's

FMLA rights and/or retaliated against Plaintiff by terminating Plaintiff after he put his employer on notice that he was applying for federally protected leave for his disability . . . .").

State Farm also says that summary judgment is warranted on this claim because Thompson was terminated for his misconduct. But as stated above, there is a genuine issue of material fact as to whether the reasons for Thompson's termination were pretextual. For instance, Thompson points to evidence that his supervisor had commented on his disability and its effect on his job performance. Though Thompson doesn't identify any statements suggesting that Wagner was concerned about Thompson's FMLA leave specifically, it can reasonably be inferred that the amount of time Thompson needed to take off for surgery was one of the reasons that Wagner felt that Thompson could not do his job. Plus, Thompson points to evidence that he requested FMLA leave on November 19, 2021, so that he could get surgery. Dkt. 39-6 at 25–27. He was then fired on December 1, 2021, eight days before he was scheduled for surgery and eight days after giving State Farm the date of his surgery. Dkt 46-18. Though temporal proximity alone is insufficient to survive summary judgment, when coupled with Wagner's comments, this evidence is sufficient to create a factual issue. *See Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 431 (2d Cir. 2016).

### IV.  Aiding and abetting liability

Finally, Defendants move to dismiss the aiding-and-abetting claims under city and state law against Wagner, arguing that Wagner "cannot be found liable for aiding and abetting his own conduct." Dkt. 30 at 25. But courts have held that aiding-and-abetting liability under the NYCHRL and NYSHRL is proper where the individual's actions "serve as the predicate for the employer's vicarious liability, so long as the employer's conduct has also been found to be discriminatory." *Farmer v. Shake Shack Enterprises, LLC*, 473 F. Supp. 3d 309, 337 (S.D.N.Y. 2020) (internal quotation marks omitted) (quoting *Xiang v. Eagle Enters., LLC*, 2020 WL 248941, at *5 (S.D.N.Y. Jan. 16, 2020)). Here, there are allegations that State Farm, through other employees like Wagner's supervisor Dominick Losquadro, was involved in the challenged decisions. *See* Dkt. 36 ¶ 123; Losquadro Decl. ¶ 11, Dkt. 43. *Cf. Farmer*, 473 F. Supp. 3d at 337 (denying motion to dismiss NYSHRL and NYCHRL aiding-and-abetting claims against individual defendant because complaint sufficiently alleged that employer defendant acted unlawfully "on the basis of a combination of [the individual defendant's] conduct and others"). So summary judgment is denied.

### CONCLUSION

For the foregoing reasons, both motions for summary judgment are denied. The Clerk of Court is directed to terminate the motions at Dkts. 29 and 37.

SO ORDERED.

Dated: March 4, 2024
New York, New York

ARUN SUBRAMANIAN
United States District Judge